■ JULES TRAIGHTEN, Respondent-Appellant, v MILLER BROS. INDUSTRIES, INC., Appellant-Respondent. — Judgment, Supreme Court, New York County, entered May 8, 1980, which, *inter alia,* awarded the plaintiff the sum of $24,294.58 plus interest on the first and second causes, reversed, on the law, and matter remanded for further proceedings consistent herewith, without costs. There is sufficient evidence in the record to sustain the trial court's finding that the plaintiff was wrongfully discharged. Likewise, there is ample evidence to support the trial court's implicit finding that plaintiff had been hired for the 1977 calendar year at a salary of $35,000 plus a 1%

commission for sales in excess of $1,000,000. Contrary to the defendant's contention, we do not read the trial court's decision as erroneously shifting the burden of proof to the defendant. Thus, the only issue remaining is whether damages were correctly calculated. Plaintiff is entitled to the remainder of his wages that would have been payable during 1977 reduced by the income he earned during the unexpired portion of the employment contract. (Hollwedel v Duffy-Mott Co., 263 NY 95, 101.) He may also receive the commissions he could have earned during the remainder of the term under reasonable probabilities. (Prescott v Buffalo Fire Appliance Corp., 237 App Div 198, affd 262 NY 475.) The trial court was correct in awarding the plaintiff on the first cause the sum of $22,749.94, which represents the balance of his salary after his dismissal on May 5, 1977. The defendant does not contest the award on the second cause of $1,544.64 that was given for unreimbursed expenses. However, the trial court should have calculated the commissions the plaintiff would have received had he not been wrongfully terminated. In 1975 and 1976, plaintiff's sales had well exceeded $1,000,000. Furthermore, at the time of his termination, plaintiff's sales had already reached the level of $988,483.04. Hence, it is apparent that, under ordinary circumstances, the plaintiff's sales would have exceeded one million dollars for 1977. In calculating damages, the trial court should have deducted those moneys that plaintiff received in unemployment benefits from the State of New Jersey. The evidence establishes that, almost immediately after his termination, plaintiff went to work for Eton Britisher, Ltd. At this same time, plaintiff was improperly receiving unemployment benefits. Under these circumstances, the unemployment benefits should be deducted from plaintiff's recovery. Likewise, the trial court should have reduced the recovery by an amount reflecting the income plaintiff should have received from J. T. Sales Corp. The plaintiff was the sole owner and sole employee of J. T. Sales Corp. The latter corporation was not organized until August of 1977. Consequently, plaintiff had worked for Eton Britisher, Ltd., for approximately two months before J. T. Sales Corp. was even organized. At trial, plaintiff testified that he did not receive any income from his corporation during 1977 even though that corporation received a cash advance of $15,000 from Eton Britisher, Ltd., for that period. Plaintiff maintained that there was no corporate income for the subject period because corporate expenses exceeded income. We find that plaintiff was using accounting devices to delay income payments until after the year 1977. Therefore, a further hearing must be held to determine a proper allocation of plaintiff's individual income to the period May 6, 1977 to December 31, 1977. In calculating this allocation, the trial court may treat J. T. Sales Corp. as the "alter ego" of the plaintiff if the evidence so warrants. Accordingly, this matter must be remanded for further proceedings consistent herewith. Upon remand, there is no necessity to consider the dismissal of the third and fourth causes or the counterclaims since the parties do not challenge those portions of the judgment. Concur — Murphy, P. J., Sandler, Carro, Lupiano and Fein, JJ.