■ BELTRONE CONSTRUCTION COMPANY, INC., Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent.— Mahoney, J. (1) Cross appeals from an order of the Court of Claims (Benza, J.), entered February 7, 1992, which partially

granted claimant's motion for summary judgment and denied the State of New York's cross motion for summary judgment, and (2) appeal from the judgment entered thereon.

These appeals involve the interpretation of section 02225 of the general construction contract between claimant and the State relative to payment for rock removal. The facts are essentially undisputed. In 1984, claimant entered into an $18,674,000 lump-sum contract with the State to perform all of the general construction work associated with erection of the Washington Correctional Facility in Comstock, Washington County. Inasmuch as test borings indicated that bedrock likely would be encountered during excavation, section 02225 was included in the contract. Subpart 1.05, clauses A and B of that section provided:

"1.05 UNIT PRICES FOR ADDED OR DEDUCTED WORK

"A. Do not exceed 1500 cu yd of general rock removal and 1000 cu yd of rock removal for piers or trenches, except by Order on Contract. In order to avoid delay, notify the Director's Representative when the amount of completed Work approaches the quantity indicated.

"B. If an Order on Contract during the course of the Work results in the removed quantities of rock being greater or less than the numeric units of Work indicated, the contract sum will be adjusted at the following unit prices:

"1. Additional Rock Removal (General) $60.00 per cu yd.
2. Deducted Rock Removal (General) . . $46.50 per cu yd.
3. Additional Rock Removal
   (Piers or trenches) . . . . . . . . . . . . . . . . . $80.00 per cu yd.
4. Deducted Rock Removal
   (Piers or trenches) . . . . . . . . . . . . . . $60.00 per cu yd."

As expected, bedrock was indeed encountered during the excavation process. In total, claimant removed 2,688.5 cubic yards of rock; more specifically, 2,537 cubic yards of "general" rock and 151.5 cubic yards of "trench" rock.

Contending that subpart 1.05 entitled it to additional compensation over and above the lump-sum figure in the amount of $60 per cubic yard for general rock removal and $80 per cubic yard for trench rock removal, claimant submitted to the State a bill totaling $164,340 for rock removal. The State refused to pay the bill as submitted, arguing that the $18,674,-000 lump-sum included payment for rock removal and that subpart 1.05 merely provided a schedule of adjustments to the

lump-sum figure in the event that the actual amount of rock removed was greater or less than 1,500 cubic yards of general rock and 1,000 cubic yards of trench rock. Inasmuch as these conditions were met here, the State accorded claimant a credit of $60 per cubic yard for that amount of general rock removal that exceeded 1,500 cubic yards, i.e., $62,220 (1,037 cubic yards at $60 per cubic yard), and took a deduction of $60 per cubic yard for that amount of trench rock removal that was less than 1,000 cubic yards, i.e., $50,910 (848.5 cubic yards at $60 per cubic yard). This resulted in a net increase of $11,310 which the State duly tendered to claimant.

Remaining of the view that subpart 1.05 embodied a payment schedule for all rock removal and that it was entitled to the amounts originally requested, claimant commenced the instant claim. Following joinder of issue and the completion of some discovery, claimant moved for summary judgment on this claim and another related claim. The State cross-moved for the same relief. While the Court of Claims granted claimant's motion for summary judgment on the related claim, it denied both summary judgment motions on the rock removal claim, concluding that section 02225 was ambiguous on the issue of payment for rock removal and that the extrinsic evidence submitted was insufficient to ascertain the parties' intent. Both parties appeal.

The threshold issue in matters of contract interpretation is whether, on its face and without reference to extrinsic evidence, the contract is reasonably susceptible of more than one interpretation (*Chimart Assocs. v Paul,* 66 NY2d 570, 572-573). Resolution of this issue presents a question of law for the court (*Van Wagner Adv. Corp. v S & M Enters.,* 67 NY2d 186, 191). If the contract is determined to be unambiguous on its face, absent the presence of any colorable defenses to its enforcement, it will be upheld according to its terms (*see, Serna v Pergament Distribs.,* 182 AD2d 985, *lv dismissed* 80 NY2d 893; *Hudson-Port Ewen Assocs. v Chien Kuo,* 165 AD2d 301, *affd* 78 NY2d 944).

While, concededly, subpart 1.05 could be more clearly written, in our view, when it is considered in conjunction with section 02225 as a whole, it is susceptible of only one interpretation, namely, as a price schedule by which adjustments to the lump-sum contract price are to be made based upon the extent to which the actual amount of each category of rock removed exceeded the baseline volumes. Subpart 3.01 (A) makes clear that rock removal is part of the duties of the

general contractor, thus indicating that those costs are to be included in the lump-sum compensation figure. This indication is borne out by a plain reading of the remainder of the section. The heading of subpart 1.05 is entitled "unit prices for added or deducted work". Inasmuch as one cannot make additions or subtractions in the abstract but must have a definite baseline figure as a starting point, the only realistic interpretation of the language in subpart 1.05 (A), (B) and (F) delineating the numeric units of 1,500 cubic yards of general rock and 1,000 cubic yards of trench rock is that these amounts are the base volume figures which are to be factored into the lump-sum compensation figure that the contractor bids on the project. This establishes the lump-sum price as the baseline figure upon which the subpart 1.05 (B) unit price adjustments are to operate and is a conclusion consistent with the statement in subpart 1.05 (B) that "the *contract sum* will be adjusted at the following unit prices" (emphasis supplied). Interpretation of section 02225 as including the stated volumes of rock removal as part of the lump-sum figure and use of that figure as a baseline for the subpart 1.05 (B) adjustments is further supported by a reading of subpart 1.05 (C), (D) and (E), which explain precisely what costs are included in the subpart 1.05 (B) unit price adjustments and expressly advise the contractor to include any additional anticipated costs in its bid price. Indeed, any other interpretation, including that urged by claimant, to wit, that the subpart 1.05 (B) price schedule was in reality a payment schedule for *all* rock removal, would render most, if not all, of the section 02225 language meaningless and is directly contradicted by a reading of the section in its entirety.

Weiss, P. J., Levine, Crew III and Harvey, JJ., concur. Ordered that the order and judgment are modified, on the law, without costs, by reversing so much thereof as denied the State's motion for summary judgment dismissing that part of the claim seeking compensation for rock removal; motion granted to that extent, summary judgment awarded to the State and said claim dismissed; and, as so modified, affirmed.