John **COMENOS**, Plaintiff,

v.

**VIACOM INTERNATIONAL, INC.,** Defendant.

Civ. A. No. 93–72231.

United States District Court, E.D. Michigan, Southern Division.

July 6, 1994.

Charles Gottleib, Southfield, MI, for plaintiff.

William Sargent and Honigman Miller, Detroit, MI, for defendant.

## ORDER DENYING DEFENDANT'S MO- TION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MO- TION FOR PARTIAL SUMMARY JUDGMENT

GADOLA, District Judge.

On April 28, 1994, defendant filed a motion for summary judgment and plaintiff filed a partial motion for summary judgment. On May 9, 1994, plaintiff filed a response to defendant's motion. Defendant responded to plaintiff's motion May 12, 1994. Plaintiff filed a reply brief May 17, 1994. Defendant filed a reply brief May 16, 1994. Pursuant to LR 7.1(e)(2) (Jan. 1, 1992, E.D.Mich.), the court determined that no oral argument was necessary. Discovery closed in this case March 18, 1994.

### I. Facts

Plaintiff John Comenos began working as General Sales Manager of the radio station, WLTI, Southfield, Michigan, for Viacom Broadcasting, Inc., a wholly owned subsidiary of defendant Viacom International, Inc., in March 1989. On March 1, 1989, plaintiff and Viacom Broadcasting, Inc. signed a letter agreement (the "1990 Contract") setting forth the terms of plaintiff's employment, including an agreement that the Term of Employment would extend "for a period through and until December 31, 1990." Exhibit A to Complaint.

In December 1990, the parties entered into a new employment agreement which is dated to commence "as of January 1, 1991" (the "1991 Contract"). The 1991 Contract differs from the 1990 Contract in only a few material respects: *inter alia*, it calls for an increase in plaintiff's compensation, defines the Term of Employment as extending "through and until December 31, 1991," and is between plaintiff and Viacom International, Inc. ("Viacom"), the parent company, instead of Viacom Broadcasting, Inc., the subsidiary. Exhibit B to Plaintiff's Motion. Both the 1990 and 1991 Contracts contain a choice of law clause whereby the parties agree that "This Agreement and all matters or issues collateral thereto shall be governed by the laws of the State of New York applicable to contracts entered into and performed entirely therein." Exhibit A to Complaint (1990 Contract) and Exhibit B to Plaintiff's Motion (1991 Contract), both at para. 12.

In December 1991, the parties agreed orally to renew the terms of the 1991 Contract with the modification that plaintiff would receive another increase in compensation for the 1992 year. Plaintiff, however, was not asked to sign a new contract for 1992; rather, his boss, Terry Wood, gave him a memorandum, dated January 8, 1992, indicating what plaintiff's compensation would be for 1992. The parties agree that with respect to other matters the terms of the 1991 Contract applied and that contract effectively was renewed for the 1992 Term.

In December 1992, plaintiff discussed with Wood the possibility of receiving another increase in compensation for 1993. Wood told plaintiff that he would send to Viacom officers the necessary paperwork requesting the increase.

However, sometime in the latter part of 1992, George Wolfson, Senior Vice President of Operations for Viacom International, Inc., had begun monitoring WLTI's performance because Viacom suspected that the radio station was not being managed as well as it could be. In early January 1993, Wolfson fired Wood as station manager. Three months later, on March 5, 1993, Wolfson also fired plaintiff.

Plaintiff filed the instant action in Oakland County Circuit Court in May 1993, alleging that under New York law his contract had been implicitly renewed, and that the March termination of his employment therefore violated his contract with Viacom for a one-year Term of Employment. Defendant removed the action to federal court on May 27, 1993, alleging diversity jurisdiction. Defendant disputes some of plaintiff's factual claims, and alleges in its defense that plaintiff was aware that defendant did not wish to enter into a new contract for 1992, and that plaintiff was working as an at-will employee between January 1, 1993 and March 5, 1993.

The parties agree that on or about the day that Wolfson fired Wood, Wolfson also had a meeting with plaintiff. The parties disagree, however, as to what was said at that meeting. Plaintiff testified at his deposition that he

asked Wolfson at that meeting whether he would be getting the raise he had requested through Wood. Plaintiff claims that Wolfson's responded by saying the following:

> There are some problems, in my perception, at the radio station. I don't know if the problem is you, I don't know if the problem is Terry [Wood], I don't know if the problem is Marge. I don't know what I'm going to do. In the meantime, we'll continue the 1992 deal.

Plaintiff's Deposition at 156. Wolfson, on the other hand, claims that at that meeting he told plaintiff "I have turned down your raise that was submitted in December. And ... we are not renewing your contract." Wolfson's Deposition at 105–07.

The parties also disagree about the events, (and the significance thereof), that occurred in the fall of 1992. Defendant claims that plaintiff's performance was substandard and that Wolfson and others had had many meetings with plaintiff concerning his poor performance. Plaintiff, on the other hand, claims that Wolfson's discussions with him did not specify that his performance was poor but rather dealt generally with defendant's concerns about the radio station's overall performance. The court finds, for the following reasons, that these factual disputes create genuine issues of material fact upon which summary judgment may not be entered.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a

fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Analysis

### A. Choice of Law

■ It has long been established that a federal court, in a diversity litigation, must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Defendant claims that Michigan law provides that contracts which are to be performed in Michigan are to be adjudicated in accordance with Michigan laws. As support for this proposition, defendant cites to two cases: *Meijer, Inc. v. General Star Indem. Co.,* 826 F.Supp. 241 (W.D.Mich.1993) and *Fireman's Fund Ins. Cos. v. Ex–Cell–O Corp.,* 750 F.Supp. 1340 (E.D.Mich.1990). Both of these cases are inapposite, however, because neither involves a contract that contains a choice of law clause.

■ "The Michigan Supreme Court recognizes the validity of contractual choice of law provisions if (1) there is a 'reasonable relationship' between the chosen state and the transaction, and (2) its enforcement would not offend public policy considerations." *In re Air Crash Disaster, Detroit Metro. Airport,* 757 F.Supp. 804, 807 (E.D.Mich.1989), *citing Snider v. Lone Star Art Trading Co., Inc.,* 672 F.Supp. 977, 982 (E.D.Mich.1987), *aff'd,* 838 F.2d 1215 (6th Cir.1988).

■ In the instant case, defendant is a Delaware corporation with its principal place of business in New York. At the making of the 1990 Contract, plaintiff also was a citizen of New York State. These contacts with New York are sufficient to create a reasonable relationship between the chosen state and the transaction.

■ In order for New York law to violate some fundamental policy of Michigan, it must be shown that there are *significant differences* in the application of the law of the two states. *Banek Inc. v. Yogurt Ventures U.S.A., Inc.,* 6 F.3d 357, 362 (6th Cir.1993) (emphasis added). In the instant case, defendant has failed to demonstrate *any* difference between Michigan law and New York law with respect to the point at issue in this case, which is, whether a new contract was implicitly created by the parties' having continued the employment relationship under the same terms as the previous year's contract.

Defendant cites to the case of *Wall v. Lunn Laminates, Inc.,* 350 Mich. 626, 86 N.W.2d 804 (1957), for the proposition that Michigan courts have declined to apply the implied contract rule. The *Lunn* case, however, does not stand for this proposition. In fact, the defendant in *Lunn* admitted that Michigan follows the implied contract rule so long as the original contract contained a Term of Employment of at least one year. *Id.* at 630, 86 N.W.2d 804.[1] Moreover, the Michigan Supreme Court, in deciding *Lunn,* explicitly stated that "[f]or the purpose of the opinion we shall assume, but without so holding, that plaintiff's contract had been renewed for an additional [ ] term." *Id.* Thus, the single case cited by defendant for the proposition that Michigan law differs from New York law provides utterly no support for defendant's position. Defendant's citation to the *Lunn* case is disingenuous.

There being no showing of any significant difference between the law of New York and the law of Michigan, the parties' choice of law clause, designating New York law as controlling, shall be upheld.

### B. Whether There is a Genuine Issue of Material Fact

■ Both defendant and plaintiff seek summary judgment on the issue of whether a

---

**1.** The defendant in *Lunn* case argued that the plaintiff's contract could not be presumed renewed because the term of his employment contract had been only six months.

new employment contract for the 1993 year was implicitly created by the conduct of the parties. As a general rule, under New York law, "even where [an] agreement expires by its terms, if the parties continue to perform as before, an implication arises that they have mutually assented to a new contract containing the same provisions as the old." *Teachers Ins. & Annuity v. Ormesa Geothermal,* 791 F.Supp. 401, 415 n. 4 (S.D.N.Y. 1991). This general principle of contract law has been consistently applied in the context of employment contracts. *Cinefot Int'l Corp. v. Hudson Photographic Indust.,* 13 N.Y.2d 249, 246 N.Y.S.2d 395, 397, 196 N.E.2d 54, 55–56 (1963); *Borne Chemical Co., Inc. v. Dictrow,* 85 A.D.2d 646, 445 N.Y.S.2d 406, 411 (1981).

> It is the [settled] law of this State that, where one enters into the employ of another under a contract for a year's service at a yearly salary and continues in the employment after the year's end, there is available an inference or implication of fact that the parties intended to renew for another year.

*Cinefot,* 246 N.Y.S.2d at 397, 196 N.E.2d at 55–56.

■ The presumption that a new contract has been created is, however, rebuttable. *Cinefot,* 246 N.Y.S.2d at 398, 196 N.E.2d at 56.

> "The rule is not really one of substantive law, but of evidence. Entering into a contract to run for a year, and then continuing to act as if its time had not run, is sufficient evidentiary support for a finding that the parties in fact intended to keep it alive for another year.... Defendant of course may bring forward evidence that the parties intended otherwise."

*Id.*

■ In this case, according to the facts agreed upon by the parties, the parties "continued as before," inasmuch as plaintiff continued to perform the same duties and to receive the same compensation as he had in the previous year. Thus, the burden is on defendant to prove facts which demonstrate that the parties, although they continued as before, mutually intended that the contract would not be renewed. Plaintiff and defen-dant present conflicting versions of what transpired in the winter months of 1992–93. Thus, there exist genuine issues of material fact which preclude granting summary judgment to either side.

## C. Defendant's Other Arguments

Defendant presents a number of other arguments in support of its motion for summary judgment. Though the court finds none of these arguments persuasive, it will briefly discuss some of the points raised by defendant.

### (i). The Merger Clause

■ The 1991 Contract contains a merger clause which states that

> [t]his Agreement contains the entire understanding of the parties hereto relating to the subject matter herein contained, and can be changed only by a writing signed by both parties hereto.

Exhibit B to Plaintiff's Motion at para. 13. Generally, the purpose of a merger or integration clause in a contract is to invoke the parol evidence rule which bars extrinsic evidence from being introduced to vary or modify a writing that is not ambiguous on its face. *See Investors Ins. Co. of Amer. v. Dorinco Ins. Co.,* 917 F.2d 100, 104 (2d Cir.1990) (parol evidence rule particularly appropriate where contract contains integration clause providing that the agreement represents the entire understanding); *United States v. Wallace & Wallace Fuel Oil Co.,* 540 F.Supp. 419, 426 (S.D.N.Y.1982) (integration clause providing that "this Agreement ... contains the entire understanding" invokes parol evidence rule). Like the integration clauses of the *Dorinco* and *Wallace* cases, *supra,* the merger clause at issue in the instant case invokes the parol evidence rule by stating that the agreement constitutes the "entire understanding" between the parties.

■ The merger clause in this case, however, also states that any change in the agreement must be effected by a writing signed by both parties. Defendant contends that this language applies to the Term of Employment just as it would to any other material change in the contract. According

to defendant, the contract therefore could not be extended absent a writing signed by both parties.

 Defendant misapprehends the effect of the state law rule at issue in this case. As stated *supra*, the primary issue in this case is whether a new contract was created by the parties. The implication created by state law is not that the previous agreement was modified to the change the Term of Employment; rather the implication is that a *new* contract has been formed for a new Term of Employment. In fact, the New York law only provides for a new employment contract to be created in cases where the original contract contained a Term of Employment of one year or greater. Obviously then, all of the situations to which the New York courts have applied the rule must have contained a specific Term of Employment that has expired but which the rule operates to extend for another year's term. Thus, the language of the merger clause does not bar application of the implied contract rule because the rule does not effect a modification of the old agreement; rather, the rule implies that a new contract has been created.[2]

**(ii). The Effect of the Employment Application**

 Defendant points out that in March 1989,[3] plaintiff completed an employment application that contained the following boilerplate language:

> I agree ... that my employment and compensation can be terminated, with or without cause, and with or without notice, at any time at the option of either the company or myself. I understand that no representative of *Viacom Broadcasting Inc.* other than the office of the chief executive and/or respective group head, has any authority to enter into *any agreement for relocation or employment for any specified period of time*, or to make any agreement contrary to the foregoing.

Exhibit 2 to Defendant's Brief (emphasis added).

Defendant argues that this language in the employment application somehow has the effect of rendering plaintiff an at-will employee. The court fails to see how the language herein, which discusses Viacom Broadcasting, Inc., defendant's subsidiary could have any effect on a contractual relationship between defendant and plaintiff. While the 1990 Contract was between plaintiff and Viacom Broadcasting, Inc., the subsidiary of defendant, the 1991 Contract was between plaintiff and defendant, Viacom International, Inc., the parent company. The language of the employment application makes no mention of what agreements may or may not be made with representatives of Viacom International, Inc. Thus, the employment application can have no effect on plaintiff's relationship with defendant.

**(iii). Whether the Facts Demonstrate that Defendant Was Entitled to Terminate Plaintiff For Cause**

 Defendant's final argument is that, even assuming that plaintiff was working un-

---

**2.** Even assuming that the implied contract could be considered a "change" to the previous year's contract, it is not clear whether the language "[t]his Agreement ... can be changed only by a writing signed by both parties hereto," should, under the facts of this case, be construed to bar a modification to the Term of Employment. First, because the parties agree that it was defendant who drafted the contract, the court must construe the terms of the contract in the light most favorable to plaintiff. *Division of Triple T Serv., Inc. v. Mobil Oil Corp.*, 60 Misc.2d 720, 304 N.Y.S.2d 191, 203 (Sup.Ct.1969), *aff'd*, 34 A.D.2d 618, 311 N.Y.S.2d 961 (1970) ("It is well established that a contract should be construed most strongly against its maker."). Second, "the parties through previous or subsequent conduct may place their own construction upon a contract's terms." *Id.* In the instant case, the parties

admit that for the 1992 year they agreed, orally and without a writing signed by both parties, to modify the 1991 Contract to extend the Term of Employment until December 31, 1992 and to increase plaintiff's compensation. Thus, the parties' conduct indicates that they did not consider the language now relied upon by defendant, to prevent them from modifying the Term of Employment orally and without a writing signed by both parties.

**3.** It is somewhat unclear when the application was signed by plaintiff. However, on the employment application, plaintiff indicated that he was available to start work "3/9/89." The document is then signed and dated "3/9/9." Without any evidence to the contrary, it must be assumed that the document was signed in 1989.

der a new contract when he was terminated in March 1993, under that contract defendant had the right to terminate plaintiff for "cause," and plaintiff was in fact terminated for such cause.

The parties agree that when plaintiff was dismissed he was not told that he was being dismissed for poor performance. Defendant argues that, nevertheless, plaintiff knew from previous conversations with Wood and Wolfson that his performance was not meeting defendant's expectations. Defendant claims essentially that plaintiff's poor performance consisted of weak sales and poor employee management skills. Plaintiff, on the other hand, denies that he was dismissed for cause, and he argues that, even assuming there were deficiencies in his performance, the term "cause" is narrowly defined by the contract, and does not allow defendant to terminate the employment relationship for poor performance results.

Under the contract, plaintiff had the following duties:

> During [your Term of Employment] hereunder, you agree to devote your entire business time, attention and energies to the business of Viacom, and you will perform such duties and in such capacities as may be assigned to you by the Vice President and General Manager of WLTI or the President of Viacom. You shall initially be General Sales Manager of WLTI, Southfield, Michigan. In such capacity, you shall devote your full business efforts and time to the affairs of WLTI, shall be responsible for the supervision of all station departments and shall work subject to, and implement, such policies as may be established by Viacom from time to time.

Exhibit B to Plaintiff's Motion at para. 2. Under paragraph 9, the contract defines the circumstances under which plaintiff could be terminated by defendant. That paragraph reads as follows:

> *Breach.* Viacom may, at its option, terminate this Agreement forthwith for "cause." For purposes of this Agreement, termination of this Agreement for "cause" shall mean termination for dishonesty, conviction of a felony, or willful unauthorized disclosure of a trade secret or other confi-

dential material information of Viacom, or *if you* at any time materially breach this Agreement, or at any time *fail, neglect or refuse to substantially perform your obligations* hereunder, except in the event of your disability as set forth in Paragraph 8.

*Id.* at para. 9 (emphasis added). Defendant does not allege that plaintiff is guilty of dishonesty, was convicted of a felony, or disclosed any trade secrets or confidential material. Defendant also does not allege that plaintiff otherwise breached the 1991 Contract. Thus, the only "cause" remaining for which plaintiff could be terminated is that plaintiff "fail[ed], neglect[ed] or refuse[d] to substantially perform [his] obligations" under the contract.

 The interpretation of contract language is a question of law that the court must decide. *Beltrone Const. Co. v. State of New York,* 189 A.D.2d 963, 592 N.Y.S.2d 832, 834 (1993). The threshold question in matters of contract interpretation is whether on its face and without reference to extrinsic evidence, the contract is clear and unambiguous. *Id.* "If it determined that the provisions of the contract are clear and unambiguous, interpretation thereof is a question of law for the court and effect must be given to the parties' expressed intent." *Singh v. Dyckman,* 608 N.Y.S.2d 497 (App.Div.2d 1994).

The court finds that the terms of the 1991 Contract defining plaintiff's duties and defining the "cause" that is necessary for defendant to terminate the contract are not ambiguous. The contract language at issue here states that defendant can terminate if plaintiff "fail[s], neglect[s], or refuse[s] to substantially perform his obligations *hereunder."* *Id.* (emphasis added). Under paragraph 2 of the contract, plaintiff's obligations are defined as (1) devoting his entire business time, attention and energies to the business of defendant, (2) performing the duties assigned to him by defendant, and performing in such capacities as defendant requests of him, (3) devoting his full business efforts and time to the affairs of WLTI, (4) supervising the WLTI's departments, and (5) following defendant's policies. There is no requirement under the contract that plaintiff meet specific

sales quotas or obtain particular results. Rather, the contract focuses on plaintiff's time, attention, efforts, supervision of staff, and adherence to company policies. Thus, the court finds that under the contract, plaintiff could not be terminated for failing to achieve specific goals or results. Therefore, in order to demonstrate that plaintiff was properly terminated for cause under the contract, defendant must demonstrate that plaintiff failed, neglected, or refused to (1) devote his entire business time, attention and energies to the business of defendant, (2) perform the duties assigned to him by defendant, or perform in such capacities as defendant requests of him, (3) devote his full business efforts and time to the affairs of WLTI, (4) supervise WLTI's departments, or (5) follow defendant's policies.

### ORDER

Therefore, it is hereby **ORDERED** that plaintiff's motion for partial summary judgment is **DENIED.**

It is further **ORDERED** that defendant's motion for summary judgment is **DENIED.**

**SO ORDERED.**