**John COMENOS, Plaintiff,**

v.

**VIACOM INTERNATIONAL, INC., Defendant.**

**Civ. A. No. 93–72231.**

United States District Court,
E.D. Michigan,
Southern Division.

April 13, 1995.

Charles Gottlieb, Gottlieb & Goren, South-field, for plaintiff.

William D. Sargent, Honigman, Miller, Schwartz & Cohn, Detroit, for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING THE PARTIES' PRE-TRIAL MOTIONS

GADOLA, District Judge.

Plaintiff John Comenos is suing defendant Viacom International, Inc. for breach of an employment contract. Just prior to the commencement of trial in this matter, defendant filed nine pre-trial motions and plaintiff filed a renewed motion in limine. A hearing was held on these motions on March 31, 1995.

### I. Background

Plaintiff is a former employee of defendant Viacom. He worked as the General Sales Manager of the radio station WLTI of Southfield, Michigan until he was fired on March 5, 1993. WLTI is owned by a subsidiary of Viacom.

Plaintiff claims that in January 1993 his one-year written employment contract with Viacom was renewed. Plaintiff also claims that Viacom breached the renewed contract when it fired him in March 1993 without just cause as defined by the contract.

Viacom contends that it did not renew his prior contract. As a result, Viacom claims that plaintiff was an at will employee who could be fired for any reason. Up until this point in the litigation, Viacom has argued that even if his contract had been renewed, it had good cause to fire plaintiff. Viacom claims that plaintiff was a bad manager of his underlings and that he had a poor performance in procuring advertising revenue for the radio station.

In a July 1994 decision denying the parties' cross motions for summary judgment, this court found that there were genuine issues of material fact that should be decided at trial. *Comenos v. Viacom Int'l, Inc.,* 857 F.Supp. 1160 (E.D.Mich.1994). The court identified the main issues to be decided at trial as follows: (1) Did Viacom renew plaintiff's employment contract for 1993?; if the contract was renewed, (2) did Viacom have good cause under the contract to fire plaintiff in March 1993?

## II. Defendant's Motion # 1: Cause and Damages

Defendant is seeking to exclude from trial the issues of just cause to terminate and damages. Defendant is withdrawing its claim that it fired plaintiff for cause under the contract. Instead, defendant is now relying solely on its claim that plaintiff's contract was not renewed for 1993. In addition, defendant contends that plaintiff's damages need not be presented to the jury because the parties are in agreement as to the amount of damages plaintiff would receive if his contract was renewed.

The court will grant defendant's motion. The only issue for trial will be whether plaintiff's contract was renewed. Furthermore, based upon the court's rulings on the remaining legal issues concerning damages in this opinion, there appears to be nothing left for the jury to decide as to the amount of damages. The parties have indicated that they will be able to submit a stipulation on damages following the issuance of this opinion.

## III. Defendant's Motion # 2: Settlement Offers

■ Pursuant to Rule 408 of the Federal Rules of Evidence, defendant wants to exclude evidence of (1) a settlement offer made to plaintiff, (2) a settlement between defendant and Terry Wood (plaintiff's boss at the radio station who was also fired), and (3) a settlement between defendant and Marge Schwartz (plaintiff's subordinate who was in charge of the local sales department). Defendant argues that this settlement evidence is inadmissible under Rule 408 and irrelevant to the issue to be decided at trial.

Rule 408 bars evidence of settlements to prove liability for the claim settled. Rule 408 reads in full as follows:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal, investigation or prosecution.

*Id.*

In response to defendant's motion, plaintiff states that he does not intend to offer any evidence concerning the settlement offer that was made to him.[1] However, plaintiff does intend to offer evidence of the fact that Wood and Schwartz were paid for the period remaining in their contracts even though the station's performance was allegedly poor.

Finally, plaintiff claims that the settlements with Wood and Schwartz are admissible because they are relevant to the credibility and bias of Wood and Schwartz. Both individuals have apparently testified that plaintiff had no reason to fear that his job was at risk or that his contract would not be renewed. As a result, plaintiff claims that defendant will try to attack their credibility. Plaintiff would like to introduce evidence of any settlement given to them by defendant in order to bolster their credibility by showing that they are actually biased in favor of defendant.

The court finds that any settlement offer made to plaintiff is inadmissible under Rule 408. The settlements entered into with Wood and Schwartz are irrelevant to the issue of whether plaintiff's contract was renewed. Wood had a written contract for 1993 and Schwartz was an at will employee. As a result, their circumstances differ from those of the plaintiff where there is a dispute as to whether his contract had been renewed. The way Wood and Schwartz were treated by defendant may have been of some relevance were the issue of just cause to terminate still

---

1. The parties are in agreement that plaintiff's proposed exhibit 5 should be redacted to remove any reference to the settlement offer made to plaintiff.

to be litigated. Finally, the court will defer its decision on whether the settlements with Wood and Schwartz can be admitted to show bias and on the issue of credibility until these issues arise at trial. In this way, the court will be able to examine the full circumstances in which the settlements will be introduced and then determine their admissibility.

## IV. Defendant's Motion #3: Amendment of Pre-trial Order

■ Defendant is seeking to amend the joint final pre-trial order to include as defendant's proposed exhibit 51 a recently discovered letter dated March 9, 1993 and written by plaintiff to one of defendant's executives.

Under Local Rule 16.2(b)(7) (E.D.Mich. Jan. 1, 1992), a party may propose an exhibit for admission at trial which is not in the final pre-trial order after a showing of good cause. Defense counsel alleges that he only received the letter a few days prior to the filing of the motion. In addition, defendant claims that plaintiff will not be prejudiced by the addition of the letter at this time because plaintiff was the author of the letter and was thus aware of its contents.

The court will allow defendant to amend the pre-trial order. It appears that defendant has demonstrated good cause. Furthermore, the court finds that plaintiff will suffer little, if any, prejudice as a result of the addition of the proposed exhibit. The probative value of the letter seems limited and plaintiff has not suffered unfair surprise because of the nature of the exhibit.

## V. Defendant's motions #4–6: Damages Issues

### A. Vacation and Severance Pay

Defendant contends that plaintiff should be barred from seeking severance and vacation pay because he did not pursue these claims in the joint final pre-trial order. Plaintiff admits that he is not seeking severance and vacation pay. As a result, defendant's motion will be granted.

### B. Post–Termination Commissions

■ Defendant contends that even if plaintiff wins his lawsuit, he should not receive any commissions for the period of 1993 after his termination. Under the 1992 contract, which would govern for 1993 if it is found to have been renewed, plaintiff receives a certain percentage of the sales made by the radio station. Defendant contends that since plaintiff did not work at the station for most of 1993, he should not be rewarded for sales made by his replacement even if his contract was breached. Plaintiff has already been paid a pro rata share of commissions for the period of 1993 during which he was employed by defendant.

The court finds that defendant's motion lacks merit. If defendant breached plaintiff's employment contract, then plaintiff should be paid the amount of commissions that he lost due to the breach. *See Traighten v. Miller Bros. Indus., Inc.,* 80 A.D.2d 802, 437 N.Y.S.2d 101, 102 (N.Y.1981) (plaintiff may receive commissions as damages for wrongful termination based upon sales occurring after termination); *see also Prescott v. Buffalo Fire Appliance Corp.,* 237 A.D. 198, 260 N.Y.S. 840 (N.Y.App.Div.1932) ("damages should have been measured by the commissions which the plaintiff might have earned during the remainder of the term under reasonable probabilities"), *aff'd,* 262 N.Y. 475, 188 N.E. 27 (1933). As a result, the court will deny defendant's motion. This issue need not go before the jury because the parties have already stipulated to an amount of damages plaintiff should be paid if the court finds that he can recover commissions under the contract.

### C. Life & Long–Term Disability Insurance

Defendant contends that plaintiff should be barred from seeking damages for life and long-term disability insurance as promised in the contract. It alleges that there is no evidence showing that plaintiff suffered any out-of-pocket expenses during 1993 to pay for life and disability insurance. Also, defendant argues that since plaintiff did not die or suffer a long-term disability during 1993, then he does not deserve any damages for these benefits because of defendant's alleged breach. In addition, defendant points out that plaintiff did not ask for damages for life insurance in the joint final pre-trial order.

In response, plaintiff contends that he is entitled to recover the value of life and disability insurance because these fringe benefits were promised to him in the contract whether or not he died or was disabled. Plaintiff does admit that he did not include life insurance in his request for damages in the pre-trial order. However, plaintiff has now requested that he be allowed to amend the pre-trial order to add this item of damages. He asserts that he asked for such benefits in the complaint and the mediation statement. In addition, he contends that defendant has been aware of this aspect of the claim for damages throughout the course of litigation.

The court finds as a matter of law that plaintiff is not entitled to recover the value of group life and disability insurance should he establish that his employment contract was renewed. The law of damages seeks "to place the aggrieved party in the same economic position he would have had if the contract had been performed." Calamari & Perillo, *Contracts* § 14–4. In this instance, plaintiff claims to have been damaged because he was not covered by defendant's group life and disability insurance policy. However, plaintiff has not alleged that he was forced to purchase substitute insurance coverage for the period remaining in the contract. Nor has plaintiff alleged that he could have recovered under the policies had he been covered.

In *McAleer v. McNally Pittsburgh Manufacturing Co.*, 329 F.2d 273, 277–78 (3d Cir. 1964), the court held that a discharged employee could not recover the cost of promised group life insurance benefits when he did not purchase a replacement policy.[2] Similarly, in *Brannan v. Wyeth Laboratories, Inc.*, 526 So.2d 1101 (La.1988), the court declined to award a discharged employee the cost of promised dental insurance. Instead, the court awarded the employee the cost of a trip to the dentist that he paid during the period that he would have been covered. *Id.; see also Kemnetz v. Elliott Farmers Grain Co.*,

136 Ill.App.3d 226, 90 Ill.Dec. 793, 796, 482 N.E.2d 1076, 1079 (1985) (discharged employee awarded cost of substitute medical insurance). In the same way, the court finds that plaintiff is not entitled to recover the cost of group life and disability insurance because he has not demonstrated that he suffered any economic loss as a result of defendant's alleged breach of its promise to provide such benefits.

## VI. Defendant's Motion # 7: Oral Statement by George Wolfson

Defendant seeks to prevent plaintiff from introducing an oral statement allegedly made by George Wolfson, an executive working for defendant. Sometime in early January 1993, plaintiff had a conversation with Wolfson in which plaintiff asked Wolfson whether he would be getting a raise. According to plaintiff's deposition testimony, Wolfson made the following statement in response:

> There are some problems, in my perception, at the radio station. I don't know if the problem is you, I don't know if the problem is Terry [Wood], I don't know if the problem is Marge [Schwartz]. I don't know what I'm going to do. In the meantime, we'll continue the 1992 deal.

Plaintiff's dep. at 156. Plaintiff is seeking to introduce this statement to show that plaintiff and defendant mutually agreed to renew the 1992 contract for 1993.

Defendant argues that according to its own policy and procedures manual, an employment contract for a specified period of time had to be in writing and signed by the office of the chief executive or an appropriate group head of the company. As a result, defendant argues that even if Wolfson made the alleged statement, it is not legally binding upon the company. Thus, it is irrelevant under Rule 401.

The court will deny defendant's motion. This issue has already been raised by defendant and rejected by this court on two prior occasions in its motion for summary judgment and in its motion for reconsideration.

---

2. Neither party cited any authority that directly addresses this particular issue. This is a result of the fact that the "problem of the valuation of fringe benefits as an element of salary has yet to

be explored by the courts." Calamari & Perillo, *Contracts* § 14–18. In these circumstances, the court will consider persuasive authority from outside of New York.

There appears to be no reason to revisit this issue yet again. In addition, it is obvious that plaintiff's testimony about what Wolfson said to him about contract renewal is important and relevant evidence going to the heart of the only issue that needs to be decided by the jury.

### VII. Defendant's Motion # 8: Progressive Disciplinary Procedure

Defendant wants to bar plaintiff from introducing evidence relating to defendant's progressive disciplinary policy as set forth in defendant's procedure and policies manual. Defendant contends that the policy is irrelevant and, if relevant, is inadmissible as unfairly prejudicial to defendant under Rule 403.

Defendant argues that its progressive disciplinary policy is irrelevant because there is no requirement in the 1992 employment contract, which would govern plaintiff's employment if it was renewed, for progressive discipline. Thus, it does not relate to the issue of whether plaintiff and defendant mutually agreed to enter into an agreement for 1993. Furthermore, defendant contends that the jury may be mislead by any reference to progressive discipline into thinking that such discipline was necessary before plaintiff could be fired.

In response, plaintiff argues that the progressive disciplinary policy is relevant. Because plaintiff was never warned of poor performance under the policy, he would not reasonably believe that his performance was bad and that his contract would not be renewed. Plaintiff also claims that the lack of progressive discipline would impeach the credibility of defendant's executive who fired plaintiff by showing that plaintiff was not performing poorly.

The court finds that defendant's progressive disciplinary policy is inadmissible because it is irrelevant and misleading. The policy at issue appears to be designed for lower-level employees unlike plaintiff. More importantly, the employment contract at issue has no provision for progressive discipline. Thus, defendant's discipline policy is irrelevant and would mislead the jury into believing that a policy designed for lower-level employees should apply to a top executive. Under these circumstances, the court will grant defendant's motion to exclude the policy.

### VIII. Defendant's Motion # 9: Factual Presumption

Defendant seeks to prevent plaintiff's counsel from mentioning to the jury during opening statement and during the presentation of evidence that there exists a factual presumption or inference that may be relevant to this case. Under New York law, when an individual works under an employment contract for a year's term and then continues to work after the year's end, there is an inference that the parties intended to renew the contract for another year. Defendant contends that any mention of this legal principle during trial would be unfairly prejudicial until the court decides on jury instructions.

The court will grant defendant's motion. The court will defer its decision as to whether to instruct the jury about the inference under New York law until the close of proofs. Until that time, the court will order plaintiff's counsel not to refer to the inference during the trial. The court finds that mention of the inference during opening statement would be improper because it is argumentative and that it would be an intrusion upon the court's duty to instruct the jury as to issues of law.

### IX. Plaintiff's Renewed Motion in Limine

In a prior motion, plaintiff sought to exclude several "RAD Reports" from the evidence at trial. The RAD Reports are market surveys of advertising agency employees in the Detroit area concerning their perceptions of local radio stations and their sales departments. The reports reflect upon plaintiff's performance as general sales manager. In a December 16, 1994 opinion, the court found that the reports are relevant and not hearsay for the purpose of determining whether plaintiff's contract was renewed. On the issue of cause to terminate, the court held that the reports are hearsay, but that further information concerning the methodology used to conduct the surveys was needed before a determination could be made as to whether the reports fell within one of the

exceptions to the hearsay rule. Following the court's ruling, the parties conducted the deposition of the individual who compiled the RAD Reports. Plaintiff has now renewed his motion in limine based upon the court's prior ruling and additional information gleaned from the deposition.

As an initial matter, defendant has decided to drop its claim that it had just cause under the contract to terminate plaintiff. As a result, defendant is no longer seeking to introduce the 1991, 1992, 1993, and 1994 RAD Reports for the purpose of showing that plaintiff ran a bad sales department. Thus, there is no reason to determine whether any of the reports are admissible hearsay under one of the various exceptions. Now that defendant is no longer seeking to introduce the RAD Reports for the truth of the matters asserted, the court does not need to determine whether they are admissible hearsay. Additionally, since the 1993 and 1994 RAD Reports were not reviewed by defendant when it allegedly made its decision not to renew plaintiff's contract, these two reports are not admissible for any purpose.

■ With regards to the 1991 and 1992 RAD Reports, defendant still seeks to introduce them to bolster its claim that it did not intend to renew plaintiff's contract for 1993. Defendant contends that because of the bad reviews given in the RAD Reports, which were reviewed by defendant's executives, they had no intention of renewing plaintiff's contract. In this context, the RAD Reports bolster the credibility of the testimony of defendant's executive who claims that he did not renew plaintiff's contract for 1993.

In its December 16, 1994 opinion, the court held that the 1991 and 1992 RAD Reports were relevant and were not hearsay for the purpose of determining whether the parties mutually agreed to renew plaintiff's contract for 1993. The court also indicated that it would defer its decision as to whether the RAD Reports were admissible lay opinion under Rule 701 until after the deposition of the person who compiled the reports had been taken. However, as the court pointed out on the record at the hearing for plaintiff's original motion in limine, the issue of the admissibility of the reports as lay opinion

under Rule 701 is only relevant if defendant seeks to introduce the reports for the truth of the matters contained therein. Since defendant only seeks to introduce the reports for the purpose of showing what its executives considered in making their decision of whether to renew plaintiff's contract, the court also does not need to decide whether the reports are admissible lay opinion.

As the court has previously indicated, the RAD Reports in this case can be compared to an anonymous letter sent to an employer that claimed that an employee was a wife beater and a drunkard. The issue is not whether these facts are true or admissible lay opinion, the issue is whether the employer considered the letter in deciding whether to renew the employee's employment contract. As a result, the 1991 and 1992 RAD Reports are relevant and admissible for the purpose of determining whether the parties mutually agreed to renew plaintiff's contract for 1993. It is irrelevant whether the reports are admissible lay opinion under Rule 701.

In this context, the court will deny plaintiff's renewed motion in limine. Because defendant has withdrawn its just cause to terminate defense, none of the thorny issues relating to the admissibility of the RAD Reports under one of the hearsay exceptions needs to be decided. Instead, the court will rely upon its prior ruling that found the reports admissible and relevant for the purpose of determining whether the employment contract was renewed.

### ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that defendant's motion to exclude evidence relating to the issues of cause and damages is **GRANTED**.

IT IS FURTHER ORDERED that defendant's motion to exclude offers of compromise or settlement is **GRANTED** in part and **DENIED** in part.

IT IS FURTHER ORDERED that defendant's motion to amend the joint final pretrial order is **GRANTED**.

IT IS FURTHER ORDERED that defendant's motion to bar plaintiff from seeking damages for severance and vacation pay is **GRANTED.**

IT IS FURTHER ORDERED that defendant's motion to exclude evidence of post-termination commissions is **DENIED.**

IT IS FURTHER ORDERED that defendant's motion to bar plaintiff from seeking damages for life and long-term disability insurance is **GRANTED.**

IT IS FURTHER ORDERED that defendant's motion to exclude evidence of an alleged oral statement made by George Wolfson is **DENIED.**

IT IS FURTHER ORDERED that defendant's motion to exclude evidence of its progressive disciplinary procedures is **GRANTED.**

IT IS FURTHER ORDERED that defendant's motion to exclude any reference to a factual presumption is **GRANTED.**

IT IS FURTHER ORDERED that plaintiff's renewed motion in limine is **DENIED.**

**SO ORDERED.**