■ COMPREHENSIVE HEALTH SOLUTIONS, INC., Respondent, v TRUSTCO BANK, NATIONAL ASSOCIATION, Appellant. (And a Related Proceeding.) [715 NYS2d 796] —Peters, J. Appeal from a judgment of the Supreme Court (Lynch, J.), entered November 8, 1999 in Schenectady County, *inter alia*, upon a decision of the court in favor of plaintiff.

By lease agreement dated June 15, 1989 between Freeman's Bridge Road Associates and plaintiff, commercial space (hereinafter the property) in the Village of Scotia, Schenectady County, was to be occupied by plaintiff when renovations were completed. Accordingly, the parties' contract stated as follows: "The term of the Lease shall be commencing on the 15th day of July, 1993 or two weeks following the issuance of the Certificate of Occupancy, and the completion of Tenant's Work, as defined by Rider 5 and Exhibit A, and ending on the 31st day of October, 1998 or shall end at midnight 5 years from the last day of the month of initial occupancy." Fully recognizing that these variables created an ambiguity with respect to the commencement date of the lease term, it was further noted that after occupancy the tenant was required, "at landlord's request," to execute a written agreement confirming both the commence-

ment and termination dates.[1] The lease also set forth that the annual rent was to be paid in 12 equal payments, scheduled to increase each year through the fifth year.

Although a certificate of occupancy was issued on February 23, 1994, plaintiff did not take possession of the property until April 1994. However, pursuant to a further provision in the lease annexed as a rider, plaintiff was to receive "a three (3) month rental concession beginning upon the first day of occupancy after Tenants Work is complete." Such section concludes that "[t]he rental shall go into effect the beginning of the fourth month following the date of occupancy, and continue for a five year period." Plaintiff was provided with an option to renew for one additional five-year term if written notice was tendered to the landlord "not less than six (6) months prior to the end of the initial term of this lease."

In the summer of 1998, property manager for defendant[2] inquired whether plaintiff intended to exercise its renewal option. Through such discussions, it became clear that there was a difference of opinion as to the date of termination and thus the time by which plaintiff was to exercise its option for renewal. Defendant contended that the lease expired on March 31, 1999, requiring that notice of renewal be given by September 30, 1998, whereas plaintiff contended that notwithstanding its occupancy in April 1994, the rental concession moved the expiration of the five-year term to July 10, 1999 with notice of renewal required before January 10, 1999. Notably, the parties were aware of each other's positions no later than September 10, 1998 which was prior to the expiration of the right to renew under either interpretation.

By letter dated October 7, 1998, plaintiff informed defendant's property manager that in response to its most recent visit, it still believed that the actual expiration date of the lease was unclear but it nonetheless sought to negotiate a "new lease with more favorable terms."[3] No further communications occurred until defendant received a letter dated December 30,

---

1. No such document was ever requested or executed.

2. Defendant acquired this property from Freeman's Bridge Road Associates through foreclosure proceedings.

3. There are two versions of this letter in the record. Plaintiff's version of the letter adds that "CHS will take your advice and not seek to automatically renew their lease." As explained in an affidavit by one of plaintiff's employees, a representative of defendant was advised in person in October 1998 of plaintiff's desire to renew the lease. The managing agent, as defendant's representative, advised plaintiff to express a desire to stay but renegotiate the terms. Plaintiff alleges that such advice precipitated the wording of the October 7, 1998 letter.

1998, wherein plaintiff unequivocally advised of its intention to renew for an additional five-year period.

When defendant informed plaintiff in July 1999 that it had become a month-to-month tenant and that its lease was to terminate on August 31, 1999, plaintiff commenced this declaratory judgment action. A petition to recover possession of the property and an application to consolidate these proceedings were thereafter filed. Supreme Court, granting the motion to consolidate, dismissed defendant's application and granted declaratory judgment in plaintiff's favor by finding that pursuant to paragraph 50 of the contract, the parties intended that their original five-year lease was to commence when the first rental payment was made in July 1994, not when plaintiff took possession of the property in April 1994. Accordingly, the court held that plaintiff's December 30, 1998 letter to defendant effectively extended the lease for an additional five-year term. This appeal ensued.

Our initial inquiry must center on whether the written contract, "read as a whole to determine its purpose and intent" (*W.W.W. Assocs. v Giancontieri*, 77 NY2d 157, 162; *see, Beltrone Constr. Co. v State of New York*, 189 AD2d 963, 965, *lv denied* 81 NY2d 709), is reasonably susceptible to differing interpretations (*see, Chimart Assocs. v Paul*, 66 NY2d 570, 573; *Beltrone Constr. Co. v State of New York, supra*, at 965). As a question of law to be resolved by the court (*see, Van Wagner Adv. Corp. v S & M Enters.*, 67 NY2d 186, 191), we find that the provisions therein create an ambiguity, permitting the use of extrinsic evidence (*cf., W.W.W. Assocs. v Giancontieri, supra*, at 163). We disagree with Supreme Court's resolution of this matter, for when we interpret the contract "to avoid inconsistencies and to give meaning to all of its terms" (*Barrow v Lawrence United Corp.*, 146 AD2d 15, 18), remaining "consistent[ ] with the over-all manifest purpose of the * * * agreement" (*id.*, at 18), we reach a different result.

In our view, this contract is a web of imprecise drafting as illustrated by references to various exhibits and attachments which fail to exist. While the description of the lease term in paragraph 1 (b) reflects that the month of initial occupancy was to be the commencement date, with termination set at "[five] years from the last day of the month," the provision in paragraph 50 granting a three-month rental concession notes that "[t]he rental shall go into effect the beginning of the fourth month following the date of occupancy, and continue for a five year period." In reading these provisions to avoid inconsistencies and give meaning to all of the terms, we find it logical, in

light of the quality of the draftsmanship, to conclude that the date of initial occupancy constituted the commencement date regardless of the three-month rental concession. Thereafter reading paragraph 50 with a one word editorial change, to wit, "[t]he rental shall go into effect the beginning of the fourth month following the date of occupancy and continue for * * * [the] five year period," these provisions can be fully reconciled. Finding that plaintiff took possession of the property in April 1994 and that the lease term expired on April 30, 1999, plaintiff failed to timely exercise its renewal option which terminated on October 31, 1998.

However, since "equity will intervene to relieve a tenant of the consequences of an untimely notice of an option to renew where said failure resulted from an honest mistake or inadvertence, the nonrenewal would result in a substantial forfeiture by the tenant and the landlord would not be prejudiced" (*Beltrone v Danker*, 228 AD2d 763; *see, J.N.A. Realty Corp. v Cross Bay Chelsea*, 42 NY2d 392, 397-400; *Dan's Supreme Supermarkets v Redmont Realty Co.*, 216 AD2d 512, 513; *Dutchess Radiology Assocs. v Narotzky*, 192 AD2d 1049), our inquiry is not concluded. This record reveals conversations between plaintiff and defendant's rental agent that specifically addressed plaintiff's desire to remain at the premises and the means by which this outcome could be assured which took place prior to the date when written renewal was required. It further reflects substantial improvements made by plaintiff to the property to suit its healthcare practice, again indicating an intent to remain there on a long-term basis. Since it is not clear to what extent, if any, defendant would be prejudiced if plaintiff was relieved from its untimely notice, we direct a further exploration of this equitable defense as well as those others that were not previously addressed (*see, Suchy v Frankenberg*, 251 App Div 349, 353; *see also, J.N.A. Realty Corp. v Cross Bay Chelsea*, 42 NY2d 392, 400, *supra*; *Matter of Barrow v New York City Hous. Auth.*, 59 AD2d 780, 781).

Cardona, P. J., Mercure, Spain and Graffeo, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as declared that plaintiff timely and effectively renewed the subject lease; matter remitted to the Supreme Court for a consideration of plaintiff's second, fourth, fifth and sixth affirmative defenses in response to the petition; and, as so modified, affirmed.