■ Contacare, Inc., Appellant, v CIBA-Geigy Corporation, Now Known as CIBA Vision Corporation, Respondent. [853 NYS2d 783]—

Memorandum: Plaintiff commenced this breach of contract and fraud action seeking royalties based on defendant's alleged use of plaintiff's technology for extended wear soft contact

lenses known as TC-75 lenses. Trans-Canada Contact Lens, Ltd. (Trans-Canada) and CIBA Vision Care (CIBA), a division of defendant, entered into an option agreement pursuant to which CIBA was entitled to enter into one of two license agreements. CIBA exercised its option and entered into the license agreement whereby Trans-Canada granted to CIBA a license to practice the "Know-How," defined as, inter alia, all technology relating to TC-75. Trans-Canada subsequently transferred its contact lens technology to plaintiff. Plaintiff requested an accounting and payment of royalties from defendant pursuant to the license agreement but, according to defendant, it did not use TC-75 technology to produce its contact lenses. We conclude that Supreme Court properly granted defendant's motion for summary judgment dismissing the amended complaint.

The first cause of action, for breach of contract, alleged that defendant had marketed TC-75 lenses or minor derivations thereof but had not compensated plaintiff for that use of the technology pursuant to the license agreement. Defendant met its initial burden on the motion with respect to the first cause of action by submitting evidence establishing that the lenses produced by defendant were not derivations of TC-75, and plaintiff failed to raise a triable issue of fact in opposition (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). Indeed, the only evidence submitted by plaintiff was the affirmation of an attorney who lacked personal knowledge of the issue (*see id.* at 563; *Marinelli v Shifrin*, 260 AD2d 227, 228-229 [1999]), and who was not an expert in the relevant field (*see generally Daum v Auburn Mem. Hosp.*, 198 AD2d 899 [1993]). Defendant also established its entitlement to judgment as a matter of law dismissing the second cause of action, for fraud, because it was based on the same allegations as those in the first cause of action, for breach of contract, and thus is duplicative of that cause of action (*see Tasseff v Nussbaumer & Clarke*, 298 AD2d 877 [2002]; *Welch Foods v Wilson*, 277 AD2d 882, 888 [2000]; *Crawford Furniture Mfg. Corp. v Pennsylvania Lumbermens Mut. Ins. Co.*, 244 AD2d 881, 881-882).

In the third cause of action, for fraud, plaintiff alleged that defendant had a duty to use its best effort to exploit the TC-75 technology, that defendant falsely represented that it would fulfill that duty, and that Trans-Canada relied on that representation in entering into the license agreement. A necessary element of a fraud cause of action is a misrepresentation of a material fact (*see Small v Lorillard Tobacco Co.*, 94 NY2d 43, 57 [1999]; *Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]), and defendant established in support of its motion that

it made no representations to Trans-Canada that it would use its best effort to exploit the TC-75 technology. In opposition, plaintiff alleged that, because the license agreement was exclusive, defendant thereby represented that it would use its best effort to exploit the TC-75 technology (*see generally Wood v Duff-Gordon*, 222 NY 88, 90-91 [1917], *rearg denied* 222 NY 643 [1918]; *Havel v Kelsey-Hayes Co.*, 83 AD2d 380, 382-383 [1981]).

Article 2.1 of the license agreement expressly provided that Trans-Canada granted to CIBA "a perpetual worldwide non-exclusive license, with the right to grant sublicenses, to practice the Know-How." Nevertheless, plaintiff contended that the license agreement was exclusive based on article 8.1, which provided that Trans-Canada "agrees to disclose the Know-How to [CIBA] and not to third parties." Those two provisions cannot be interpreted in a way to avoid the inconsistency (*cf. Comprehensive Health Solutions v Trustco Bank, N.A.*, 277 AD2d 861, 863 [2000]) and, although the specific provision controls when there is an inconsistency between a general provision and a specific provision (*see Muzak Corp. v Hotel Taft Corp.*, 1 NY2d 42, 46 [1956]; *Bank of Tokyo-Mitsubishi, Ltd., N.Y. Branch v Kvaerner a.s.*, 243 AD2d 1, 8 [1998]), here both provisions are specific.

The court properly concluded that article 2.1 was controlling, based on the court's review of the option agreement and attached exhibits, and thus properly concluded that the license agreement was not exclusive. CIBA exercised its option to enter into the license agreement set forth as exhibit B to the option agreement, rather than the license agreement set forth as exhibit A. A comparison of the two proposed license agreements demonstrates that exhibit A was the exclusive license agreement, whereas exhibit B was the nonexclusive license agreement. Article 2.1 of exhibit A defined the license as "exclusive," and a comparison of article 3 of each of the two exhibits demonstrates that CIBA was to pay more royalties to Trans-Canada under exhibit A's exclusive license agreement. Article 8.1 of each of the two exhibits was identical, which suggests that the language of exhibit A was inadvertently copied into exhibit B. Plaintiff contends that the court should not have considered exhibit A in interpreting the executed license agreement because exhibit A was not executed by the parties. Exhibit A, however, was part of the executed option agreement, and the court properly considered the option agreement in interpreting the license agreement because the documents were part of the same transaction (*see Nau v Vulcan Rail & Constr. Co.*, 286 NY 188, 197 [1941], *rearg denied* 287 NY 630 [1941]; *BWA Corp. v*

*Alltrans Express U.S.A.*, 112 AD2d 850, 852 [1985]). Present—Scudder, P.J., Martoche, Centra and Peradotto, JJ.