Emmett J. Schnepp, J.
The question for determination is *291 whether the holder of a mortgage to secure future advances has priority, ipso facto, over a junior purchase-money mortgage. On May 12, 1971 the defendant Lyndon Farm, Inc. executed a mortgage note, mortgage and building loan agreement in the amount of $1,500,000 in favor of the plaintiff for the construction of an apartment project. In July, 1973 Lyndon executed an additional mortgage note, mortgage and building loan agreement in the sum of $150,000 in favor of plaintiff, along with a consolidation, spreading and extension agreement. All instruments were recorded or filed in the Monroe County Clerk’s office. Because of plaintiffs dissatisfaction with, among other things, the lack of progress made in connection with the completion of the project, it first advised Lyndon in September, 1973 that the maximum amount it would lend on a reduced size project of 96 units was $1,440,000, although it was indicated that consideration would be given to loaning more to permit completion of 110 units if Lyndon obtained additional capital. On July 23, 1974 Lyndon entered into a written agreement to sell the premises for the sum of $1,628,000, payable by the assumption of the unpaid principal upon the existing mortgages of "$1,336,000 (more or less)”, conditioned upon plaintiff’s consent, by cash in the amount of $123,000 and the balance by a purchase-money bond and mortgage. It is noted that an offer to sell the premises, signed by Lyndon, dated July 10, 1976, which was not accepted, provided for the payment of the purchase price expressed in the offer in part by assumption of $1,440,000 of the unpaid principal balance of plaintiffs mortgage lien. The contract vendees, Robert L. Graney and Susan L. Graney (Graney) arranged their own financing with plaintiff, who consented to their assumption of the consolidated mortgage, upon the condition, among other things, that the purchase be completed in accordance with the contract with Lyndon. The terms of the loan were renegotiated and plaintiff agreed to provide Graney additional construction funds totaling $163,473.14, increasing the loan secured by the mortgages to $1,500,000 from its then present balance of $1,336,526.87, when improvements totaling $235,000 were completed to plaintiffs satisfaction on a project containing a total of 96 units. Under this commitment, interest was fixed at 9%% with a 30-year schedule payment, all due in 15 years. By deed dated August 20, 1974 Lyndon conveyed the premises to defendants Robert L. Graney and Susan L. Graney, subject to the indebtedness secured by the mortgages held by plaintiff, *292 which Graney assumed. The deed recited that an unpaid principal balance of $1,359,126.86 existed with interest at 93A% per annum. Lyndon also assigned its rights under the building loan agreements with plaintiff. Graney executed a bond and mortgage bearing date August 20, 1974 to Lyndon in the amount of $180,032.57 being the balance of the purchase price owing to Lyndon for the sale of said premises. This mortgage recited that it was subordinate to plaintiff’s mortgages and to all advances made thereunder. On the day of closing an additional advance of $22,600 was made by plaintiff for work performed by Lyndon, resulting in the amount of the total advances made by plaintiff under the mortgages to be the exact sum specified in the Graney deed, the amount of Graney’s purchase-money mortgage to Lyndon being increased and the amount of cash paid at closing by Graney to Lyndon reduced by the amount of $22,600. On the closing Graney and Security Trust Company executed a mortgage modification agreement, modifying plaintiff’s mortgages downward from $1,650,000 to $1,500,000, and an amended building loan contract, under which plaintiff agreed to make future advances to Graneys of $140,873.14 ($163,473.14 less $22,600) for a total mortgage loan of $1,500,000 on the assumed mortgages.
Thereafter a default occurred and the within mortgage foreclosure action was instituted. As an affirmative defense in its answer, defendant Lyndon claims that the lien of its mortgage is superior to the lien of the mortgages held by plaintiff, to the extent of advances made after the recording of the purchase-money bond and mortgage to Lyndon. Upon the trial of the issues Lyndon conceded that the amount in controversy totaled $60,000, representing advances made by plaintiff in excess of $1,440,000 after the sale of the premises to Graney, which amount, Lyndon claims, plaintiff fixed as the maximum sum it would advance under the mortgages.
From the proof adduced upon the trial of the issues it is further found as follows: Lyndon had knowledge that Graneys were handling their own financing and that they had discussed with plaintiff the assumption of its mortgages; Graney agreed to pay a higher interest rate to plaintiff with a longer time to repay the principal of the mortgages; Lyndon had no other knowledge of Graney’s financial arrangements with plaintiff; plaintiff limited the amount it would advance on the $1,650,000 commitment to Lyndon to $1,440,000, and the number of the units in the project to 96, and had knowledge of *293 the terms and conditions of the contract between Lyndon and the Graneys; Lyndon had no knowledge and none was imparted to it by plaintiff that plaintiff agreed to advance the $1,500,000 to Graney.
The law is clear that if the holder of a mortgage to secure future advances is contractually bound to make the advances in any event, the lien of his mortgage has priority as to advances made after, as well as before, the junior encumbrance attaches. But, if it is optional with the mortgagee to make or to refuse to make advances, and where it appears from an inspection of the instrument that it may decline to make the advances at its pleasure, without taking the risk of subjecting itself to damages for loss, the prior mortgage will be protected by the security of the mortgage, only as to advances made before the attaching of the junior encumbrance. Where the obligation to make advances exists or where the right to decline depends upon facts outside the instrument and which may be the subject of dispute or contention, the obligation is not optional and the holder of the mortgage is warranted in making advances in reliance upon it. The obligation to make future advances, however, is not required to be mentioned in the mortgage, but may be contained in the collateral building loan agreement. (38 NY Jur, Mortgages and Deed of Trust, § 169; Hyman v Hauff, 138 NY 48; 2 Rasch, Real Property Law and Practice, § 1703; 29 NY Univ L Rev 733.)
Here plaintiff had the option to make or refuse to make advances for various reasons as described in the building loan contracts and plaintiff did exactly what it had the right to do —it chose not to waive but to take advantage of the optional provisions — and refused to make further advances to Lyndon in excess of $1,440,000. By this action it took no risk of subjecting itself to damages by reason of the larger commitment. (Cf. Hyman v Hauff, 138 NY 48, supra.) Further, plaintiff agreed, without disclosure to Lyndon, to advance the Graneys a total of $1,500,000, some $60,000 in excess of its reduced commitment to Lyndon. Plaintiff with actual notice of the subsequent mortgage was not warranted in making this further advance in reliance on the consolidated mortgages executed by Lyndon. Lyndon’s agreement with Graney was for a fixed price for the premises, to be paid partly in cash, partly by the assumption of mortgages to the extent of the advances then made and the balance by a purchase-money bond and *294 mortgage. Lyndon would be unjustly deprived of a part of the security of this purchase-money mortgage, if, after its recording and after plaintiff had notice thereof, advances exceeded the amount of $1,440,000. Plaintiff played a major role in the transaction between Lyndon and Graney, possessed full knowledge of the nature, basis and terms of their agreement and dealt with and committed itself to Graney separately. Under the circumstances here, it is consistent with justice and equity that plaintiff be protected by the security of the mortgages only as to advances made up to the sum of $1,440,000 and that the lien of its mortgages for future advances in excess of such amount be postponed in favor of the subsequent purchase-money mortgage held by Lyndon.
Section 15-301 of the General Obligations Law has no application to the facts and circumstances of this case and in view of the holding of the court it is unnecessary to pass on other contentions advanced by the parties.
Request for findings submitted by plaintiff Nos. 1 through 8, 10, 14 and 16 and proposed findings of fact submitted by Lyndon Nos. 1 through 5, 7 and 8 are specifically found and adopted by the court and requested findings inconsistent with this decision are refused.
Accordingly, it is held that the advances made by plaintiff in excess of $1,440,000 were optional and voluntary, that the lien of plaintiff’s mortgages to the extent of $1,440,000 is prior and superior to Lyndon’s purchase-money mortgage and the said purchase-money mortgage is prior and superior to the remainder of the lien of plaintiff’s mortgages.