■ BRIARWOOD TOWERS 85TH COMPANY, Respondent, v GERALD GUTERMAN, Also Known as GERALD GUTTERMAN et al., Defendants, and BRIARWOOD ASSOCIATES et al., Appellants.— Order, Supreme Court, New York County (Irma Vidal Santaella, J.), entered June 22, 1987, which, *inter alia,* denied the motions by defendants-appellants Briarwood Associates, Jeffrey Moskin, Citicorp Community Development, Inc. and East New York Savings Bank for summary judgment dismissing the fifth, seventh, ninth and tenth causes of action, unanimously modified, on the law, to grant summary judgment to appellants Citicorp Community Development, Inc. and East New York Savings Bank dismissing the ninth and tenth causes of action as against them, and otherwise affirmed, without costs.

We modify the order of Supreme Court which found that there was a triable issue of fact as to whether appellant Citicorp Community Development, Inc. (Citicorp) was contractually obligated to make advances to appellant Briarwood Associates, and its principal Jeffrey Moskin, under the building loan agreement after Citicorp had notice of plaintiff-respondent's prior, unrecorded collateral deed securing payment of a $5,500,000 "wrap-around" note. The court also found there was an issue as to whether appellant East New York Savings Bank (East New York) had actual or constructive notice of respondent's security interest in the property prior to October 30, 1980, when East New York and Citicorp entered into certain agreements creating a consolidated first mortgage in the amount of $6,800,000.

In June 1976, when respondent sold the Briarwood Apartment complex, East New York held a $4,400,000 first mortgage on the property. Respondent transferred title to the property to a corporation controlled by defendant Gerald Guterman, and received the wrap-around note secured by the collateral deed, which was held in escrow. Thereafter, the subject property was transferred, without notice to respondent and in violation of the note, to other Guterman-controlled companies and, on October 30, 1980, it was sold to appellant Briarwood Associates. This last sale and the cost of necessary improvements to the property were financed jointly by the City of New York and Citicorp, which provided a $2,800,000 construction loan, and East New York, which agreed to a $400,000 reduction of its mortgage. In addition, East New York consented to the consolidation of its mortgage with the Citicorp construction mortgage, which was to be assigned to East New York after the property had been rehabilitated, and all three lenders were to have participating interests in the consolidated $6,800,000 first mortgage.

Respondent was not notified of these transactions affecting its interest in the subject property. Upon learning of the transfer of the property and of the construction mortgage given to Citicorp, respondent notified defendants and appellants, by letter dated December 5, 1980, of its interest in the property and that these transactions constituted defaults under the wrap-around note.

Respondent alleges that appellants knowingly and intentionally interfered with its security interest in the property, for which it seeks monetary damages and a judgment declaring that its security interest has priority over the $2,800,000

construction mortgage or that portion of said mortgage which was advanced after Citicorp had notice of respondent's unrecorded security interest.

The rule for determining the priority of a mortgage securing future advances depends on the character of the liability assumed by the mortgagee. Only if the mortgagee is contractually bound to make the advances after it learns of the existence of a prior lien or encumbrance, will the mortgagee be fully protected and its mortgage given priority over the prior liens. However, if the mortgagee is free to refuse further advances, then its mortgage will secure only those advances made before it had knowledge of the prior lien. *(Hyman v Hauff,* 138 NY 48, 54-55 [1893]; *Roslyn Sav. Bank v Merz,* 13 AD2d 550, 551 [2d Dept 1961], *affd* 11 NY2d 832 [1962]; *First Fed. Sav. & Loan Assn. v Green-Acres Bldg. Corp.,* 38 Misc 2d 149, 150 [County Ct, Monroe County 1963].)

Under the terms of the building loan agreement, Citicorp was obligated to make advances upon the borrower's compliance with certain conditions specified in that agreement, among them: that the borrower obtain a title insurance policy "insuring that the Mortgage is a valid first lien on the Premises," that the title company's searches "shall be continued to the date of each advance", and "as a condition to the making of such advance, shall disclose only such title exceptions as shall then be approved by the Lender's attorneys".

Upon receiving a copy of respondent's notice, Citicorp's attorney notified the title insurance company and inquired if any additional title exceptions would be raised under the policy, stating, "my client will not make any further advances under this building loan until it receives written authorization" from the title company. In January 1981, the title company assured Citicorp that no additional exceptions would be raised and it could proceed with the next advance.

Supreme Court found that this correspondence raised an issue as to whether Citicorp could have refused to make further advances after December 5, 1980. The court, however, did not find that the building loan agreement was ambiguous before looking to this extrinsic evidence to determine Citicorp's obligations under that agreement. In the absence of ambiguity which obscures the intentions of the parties to a contract, the interpretation of a contract and the obligations of the parties thereto are questions of law and not of fact *(Bethlehem Steel Co. v Turner Constr. Co.,* 2 NY2d 456, 460 [1957]; *State of New York v Peerless Ins. Co.,* 108 AD2d 385, 390 [1st Dept 1985], *affd* 67 NY2d 845 [1986]).

We find the terms of the building loan agreement clear and unambiguous in regard to Citicorp's obligation to make advances in accordance with the schedule of payments upon the borrower's compliance with the specified contractual conditions. The only such condition affected by respondent's notice was that concerning the title insurance delivered by the borrower. Citicorp's correspondence with the title company is entirely consistent with the contractual terms for maintenance of the title insurance policy free of title exceptions as of the date of each advance. Having received assurance from the title company that no additional exceptions would be raised in the policy, and in the absence of any indication of the borrower's noncompliance with the other contractual conditions, Citicorp was legally bound to make the scheduled advances.

While the notice of December 5, 1980 may have called into question the borrower's representations and warranties under section 5 of the building loan agreement this did not vitiate the binding force of Citicorp's obligation: "where the obligation to advance exists, or where the right to decline depends upon facts *dehors* the instrument, and which may be the subject of dispute or contention, the holder of the first security is warranted in making the advances in reliance upon his mortgage" *(Hyman v Hauff, supra,* at 55; *Security Trust Co. v Graney,* 89 Misc 2d 290, 293 [Sup Ct, Monroe County 1977]).

We also find that respondent's evidence that East New York had either actual or constructive notice of respondent's unrecorded security interest was insufficient to raise a triable question of fact. According to the deposition testimony of respondent's general partner, George Mehlman, one of his companies continued to make mortgage payments to East New York for some months after the property was sold in June 1976. Thereafter, one of the companies controlled by defendant Guterman began making the payments pursuant to the management agreement between Guterman and respondent. No proof of payments by any company under Mehlman's control or Guterman's was submitted. Mehlman did not recall informing the bank prior to December 1980 that there had been a transfer of title or that respondent had retained a security interest in the property.

The fact that a different corporate entity began making payments to East New York sometime during 1976, without more, could not serve to put the bank on notice as to the existence of respondent's security interest. Nor did it give rise to a duty to inquire inasmuch as East New York had been receiving payments from a company controlled by respon-

dent's general partner. Nothing in the record indicates that the bank knew or should have known that the new company which began making payments in 1976 was controlled by a different party, or that this change was anything more than a change of managing agents. Respondent, therefore, failed to produce facts sufficient to defeat the motion to dismiss. Concur —Sullivan, J. P., Ross, Milonas and Rosenberger, JJ.