UNITED STATES of America for the use and benefit of AWL INDUSTRIES, INC., Plaintiff,

v.

SITE REMEDIATION SERVICES CORP. and United Pacific Insurance Company, Defendants.

Site Remediation Services, Inc., Defendant–Counterclaim Plaintiff,

v.

General Accident Insurance Company of America, Counterclaim Defendant.

No. CV 98–7082.

United States District Court, E.D. New York.

April 10, 2000.

Mazur, Carp & Rubin, P.C. by Ira M. Schulman, New York City, for plaintiff and counterclaim–defendant AWL Industries and General Accident Insurance.

Stim & Warmuth, P.C. by Paula Warmuth, Huntington, New York, for defendant–counterclaim plaintiff.

## OPINION

WEXLER, District Judge.

This is a case brought pursuant to the Miller Act, 40 U.S.C. § 270b, to collect on a payment bond issued in connection with a construction project that took place at the Brookhaven National Laboratory ("BNL"). The use plaintiff, hereinafter referred to as the plaintiff, is AWL, Industries, Inc. ("AWL").[1] AWL seeks to recover payments allegedly due pursuant to its subcontract with Site Remediation Services, Inc. ("SRS"), the general contractor on the BNL construction project.

AWL commenced this action against SRS and its payment bond surety, United Pacific Insurance Company, to collect in excess of $200,000 AWL claims due for work, labor and services. After being sued by AWL, SRS asserted counterclaims against AWL's surety, General Accident Insurance Company of America ("General Accident"). In response to the counterclaim, AWL and General Accident (hereinafter referred to collectively as AWL) asserted several affirmative defenses.

Presently before the court are cross-motions for summary judgment. SRS moves for summary judgment dismissing AWL's second affirmative defense. AWL opposes the motion and cross-moves to dismiss SRS's counterclaim for common law delay damages. For the reasons that follow, both motions for summary judgment are denied.

## BACKGROUND

### I. The Parties, the Prime Contract and the Subcontract

As noted above, AWL seeks payment for work, labor and services performed in connection with a construction project at BNL (the "Project"). SRS, as the general contractor on the Project, entered into a contract with the United States, acting through the General Services Administration ("GSA"), to perform the Project (the "Prime Contract"). The Prime Contract originally required completion of the Project by June 30, 1998. The contract was subsequently modified by agreement of the parties thereto to establish a completion date of July 31, 1998. Failure to complete the Project by that date was to result in assessment of liquidated damages against SRS, on a daily basis, beginning on August 3, 1998.

After SRS entered into the Prime Contract, it entered into a subcontract with AWL to perform certain heating, ventilation and air-conditioning work at the Project (the "Subcontract"). The total amount that was to be paid to AWL under the Subcontract was $569,239. AWL alleges, and SRS does not dispute, that to date AWL has been paid only $284,195.

### II. The Liquidated Damages Clauses

The Subcontract contains two clauses that refer to liquidated damages. It is these clauses that are the subject of disagreement between the parties. One clause appears in paragraph 4.6 of the Subcontract; the other appears in Attach-

---

1. The term "use plaintiff" flows from the relationship among the United States, a general contractor and all subcontractors. Here, United Pacific Insurance Company, as surety, and SRS, as principal, delivered a payment bond to the United States, pursuant to 40 U.S.C. § 270a, conditioned upon SRS paying all lawful claims of persons supplying labor and materials used in connection with the construction project at BNL. That bond exists for the use and benefit of individuals and companies that worked on the project including, *inter alia*, AWL.

ment A to the Subcontract. Before turning to the precise language of each clause, the court observes that the Subcontract is a form that is suitable for use with all subcontractors performing work for SRS. Attachment A is the rider attached to all such forms which differentiates each form subcontract from the others. Thus, the Subcontract contains general language applicable to all subcontracts entered into between SRS and its various subcontractors. Attachment A specifies the work to be done by each individual subcontractor— in this case, it specifies the precise work to be done by AWL.

The liquidated damages clause appearing in paragraph 4.6 of the Subcontract ("Paragraph 4.6") appears as part of Article 4 of the Subcontract, entitled "Changes and Delays." Paragraph 4.4 of the Subcontract ("Paragraph 4.4") establishes that time is of the essence and that the subcontractor's work must be performed "on or before the time period specified in Attachment A." Paragraph 4.6, entitled "Liquidated Damages," states that if the subcontractor fails to complete the subcontracted work:

> within the time agreed to in the Contract Documents [2] or within such extended time granted as provided in the Contract Documents, SRS shall withhold ... payment as liquidated damages in accordance with the following schedule:

Paragraph 4.6 does not contain a schedule of liquidated damages payments. Instead, the Subcontract refers the reader to Attachment A for the schedule of liquidated damages.

Attachment A of the Subcontract, to which Paragraphs 4.4 and 4.6 refer, contains the following language (in paragraph 11) concerning liquidated damages:

> If the time of completion extends beyond March 15, 1998 liquidated damages will be incurred at the rate of $2000/day.

Thus, paragraph 11 of Attachment A supplies the information needed to "fill in the blanks" created by Paragraphs 4.4 and 4.6 of the Subcontract. The parties added handwritten material above Paragraph 4.6. That handwritten material states:

> Liquidated damages shall only be assessed against AWL if the owner makes claim for liquidated damages against SRS and if the delays are directly attributable to AWL.

III. *The Parties' Motions*

A. *SRS's Motion For Summary Judgment Dismissing AWL's Second Affirmative Defense*

In its affirmative defenses to SRS's counterclaims AWL asserts, as its second affirmative defense, that any recovery of liquidated damages is limited to liquidated damages assessed against SRS by the owner of the project. SRS moves for summary judgment dismissing this affirmative defense.

In support of its claim that the second affirmative defense is viable, AWL relies upon the handwritten rider to Paragraph 4.6, referred to above, which expressly limits the ability of SRS to collect liquidated damages from AWL to those cases where the owner assesses such damages from SRS. AWL argues that this handwritten material applies to any and all claims for liquidated damages that may be assessed against AWL by SRS.

SRS interprets the liquidated damages language differently. SRS argues that AWL bound itself to two separate liquidated damages clause. First, the clause in Paragraph 4.6, referring to cases where liquidated damages are assessed by the owner against SRS and SRS seeks to pass on such assessment to AWL. Second, AWL is argued to be bound to a separate liquidated damages clause appearing in paragraph 11 of Attachment A, which obligated AWL to finish its part of the Project by March 15, 1998 or be assessed liqui-

---

2. Paragraph 1.2 of the Subcontract defines the "Contract Documents" to include the Subcontract as well as the Prime Contract and all modifications thereto.

dated damages at the rate of $2,000 per day.

Thus, while SRS agrees that the handwritten material added to Paragraph 4.6 limits its ability to collect liquidated damages against AWL in cases where liquidated damages are assessed against SRS by the owner, it is argued that the liquidated damages clause in Attachment A— which admittedly also supplies the date and schedule for liquidated damages as contemplated by Paragraphs 4.4 and 4.6— is also a separate and independent liquidated damages clause binding AWL to complete its part of the Project by March 15, 1998 or be assessed liquidated damages for its failure to do so.

### B. AWL's Motion for Summary Judgment Dismissing SRS's Second Counterclaim

SRS's second counterclaim seeks common law delay damages against AWL. AWL seeks dismissal of this claim on the ground that an enforceable liquidated damages clause prohibits collection of common law delay damages. *See X.L.O. Concrete Corp. v. John T. Brady & Co.*, 104 A.D.2d 181, 184–85, 482 N.Y.S.2d 476, 479 (1st Dep't 1984), *aff'd*, 66 N.Y.2d 970, 973, 498 N.Y.S.2d 799, 799, 489 N.E.2d 768 (1985). SRS opposes dismissal of its delay damages claim. While SRS acknowledges the validity of the law relied upon by AWL, SRS argues that it is entitled to assert a claim for delay damages that may be pursued in the event that the liquidated damages clause is found unenforceable as a penalty.

### DISCUSSION

### I. Legal Principles

Issues of contract interpretation ordinarily present questions of law for the court to decide. *Briarwood Towers 85th Company v. Guterman*, 136 A.D.2d 456, 458, 523 N.Y.S.2d 98, 101 (1st Dep't 1988). Where the terms of a contract are clear and unambiguous, "and reasonable people could not disagree as to the meaning of the text, the contract's interpretation is a question of law to be answered by the court." *Sage Realty Corp. v. Jugobanka, D.D.*, 1998 WL 702272 *4 (S.D.N.Y. October 8, 1998). In such cases, the contract is to be interpreted with reference only to the four corners of the document and evidence as what was "really intended but unstated or misstated is generally inadmissible." *Emcee Personnel v. Morgan Lewis & Bockius, LLP*, 702 N.Y.S.2d 633, 634 (2d Dep't 2000), quoting, *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443, 566 N.E.2d 639 (1990).

Where the terms of a contract are ambiguous and susceptible to more than one meaning, the court may consider evidence outside of the contract as an aid to interpret the meaning of the language that the parties chose. *Sayers v. Rochester Tel. Corp. Supplemental Management Pension Plan*, 7 F.3d 1091, 1095 (2d Cir.1993); *Emcee Personnel*, 702 N.Y.S.2d at 634; *see Briarwood Towers*, 136 A.D.2d at 458, 523 N.Y.S.2d at 101. Resolution of the issue of whether an ambiguity exists, sufficient to allow consideration of extrinsic evidence, presents a question of law for the court. *Sayers*, 7 F.3d at 1095; *W.W.W. Assocs.*, 77 N.Y.2d at 162, 565 N.Y.S.2d at 443, 566 N.E.2d 639; *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 572–73, 498 N.Y.S.2d 344, 346, 489 N.E.2d 231 (1986); *Beltrone Constr. Co. v. State*, 189 A.D.2d 963, 965, 592 N.Y.S.2d 832, 834 (N.Y.A.D. 1993).

The language at issue will be deemed ambiguous if it is " 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement ...' " *Sayers*, 7 F.3d at 1095, quoting, *Walk-in Medical Centers, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987). Where, on the other hand, contract language has a "definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion" the contract is without

ambiguity. *Id.,* quoting, *Breed v. Insurance Co. of N. Am.,* 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978).

██ Two other canons of contract interpretation are relevant here. First, a contract should be interpreted so as to give meaning to all language used. Second, handwritten portions of an agreement should be interpreted to take precedence over any inconsistencies appearing in form language. *Cale Development Co., Inc. v. Conciliation & Appeals Bd.,* 94 A.D.2d 229, 234, 463 N.Y.S.2d 814, 817 (1st Dep't 1983), *aff'd,* 61 N.Y.2d 976, 475 N.Y.S.2d 278, 463 N.E.2d 619 (1984).

II. *There Is a Single Liquidated Damages Clause and SRS's Summary Judgment Motion Must Therefore Be Denied*

██ The court has considered the plain language of the Subcontract and concludes that, "when read in the context of the entire agreement," the language is not ambiguous. *W.W.W. Assocs.,* 77 N.Y.2d at 163, 565 N.Y.S.2d at 440, 566 N.E.2d 639. Indeed, when all words used by the parties are given effect, no language is rendered superfluous and handwritten language is given precedence over form language, there can be but one conclusion regarding the meaning of the liquidated damages clause. That meaning is the meaning advanced by AWL.

Importantly, the Subcontract and Attachment A are two parts of a single contract, they are not separate contracts. This militates in favor of finding that there is but a single liquidated damages provision to which AWL was bound.

Most convincing to the court's conclusion that there exists but a single liquidated damages clause is the fact that Attachment A exists solely to fill in the blanks in the Subcontract and thus, tailor the Subcontract to AWL. Paragraph 11 of Attachment A is therefore, not a separate liquidated damages clause, but is that part of the document that is referenced when reading Paragraphs 4.4 and 4.6 of the Subcontract.

Thus, Attachment A supplies the date contemplated by Paragraph 4.4 as well as the amount of liquidated damages contemplated by Paragraph 4.6. Not surprisingly, this amount is the same amount of liquidated damages that could be assessed by the owner against SRS if it failed to complete the Project on schedule. For these reasons, the court holds that SRS and AWL agreed that AWL would be bound by a single liquidated damages clause and that such damages could be assessed against AWL only in accordance with the handwritten material appearing at Paragraph 4.6 of the Subcontract.

██ The court does not agree, as argued by SRS, that adoption of AWL's interpretation of the contract renders the March 15 date superfluous. As noted, this date is supplied in direct reference to Paragraph 4.4 of the Subcontract. Since SRS may assess liquidated damages against AWL only if delays are "directly attributable" to AWL (as set forth in the handwritten material), the March 15 date supplies a clear milestone to support any liquidated damages claim that SRS might make against AWL. It matters not that these damages may not be collected until, at the earliest, August 3, 1998; March 15 is the date when AWL's portion of the Project should have been completed. Although SRS seeks to create an ambiguity, a party to a contract may not create an ambiguity "merely by urging" a "conflicting interpretation" of an agreement. *Sayers,* 7 F.3d at 1095.

III. *AWL's Motion Regarding Delay Damages*

The court has considered AWL's motion seeking dismissal of SRS's claim for delay damages. The court is not in possession of facts, at this time, necessary to decide the issue of the validity of the liquidated damages clause. Accordingly, the court declines to rule on this issue at this time. The motion for summary judgment dismissing the claim of SRS for delay damages is, therefore, denied at this time.

## CONCLUSION

For the foregoing reasons, the parties cross-motions for summary judgment are hereby denied.

SO ORDERED.