## In re HOLOCAUST VICTIM ASSETS LITIGATION.

### No. 02–CV–2981 (FB).

United States District Court,
E.D. New York.

April 11, 2003.

---

Morris A. Ratner, Esq., Lieff, Cabraser, Heimann & Bernstein, LLP, Burt Neuborne, Esq., Brennan Center for Justice, New York City, for Plaintiffs.

Roger M. Witten, Esq., Christopher P. Simkins, Esq., Wilmer, Cutler & Pickering, Washington, DC, for Defendants.

### *MEMORANDUM & ORDER*

BLOCK, District Judge.

Before the Court is another facet of this litigation, which comprises four consolidated class action lawsuits filed by plaintiffs, on behalf of various worldwide classes of victims of Nazi crimes and their heirs, against defendants Union Bank of Switzerland AG ("UBS") and Credit Suisse (collectively, the "banks"). The parties have called on the Court to determine whether monies that had been deposited in a special escrow account (the "Escrow Fund"),

pending final judicial approval of the parties' Settlement Agreement and the subsequent transfer of these funds to a Settlement Fund established by that agreement, should have borne simple or compound interest. Plaintiffs contend that § 2.2 of the parties' Escrow Agreement, which established the Escrow Fund, unambiguously calls for compound interest; defendants argue that it unambiguously calls for simple interest. They each contend, in the alternative, that should the Court determine that this contract language is ambiguous, extrinsic evidence supports their respective positions. The parties estimate that the amount at issue is approximately $ 4.8 million. For the reasons that follow, the Court concludes that § 2.2 is ambiguous, but agrees with plaintiffs that extrinsic evidence supports their entitlement to compound interest.

## I

Judge Korman, who has painstakingly presided over the principal aspects of this litigation,[1] and has used his consummate talents to bring the Settlement Agreement to fruition, has meticulously set forth the background and history of the case. *See In re Holocaust Victim Assets Litig.,* 105 F.Supp.2d 139, 141–46 (E.D.N.Y.2000). Under the Settlement Agreement, which was entered into on August 12, 1998, the banks agreed to pay $1.25 billion in four installments into a Settlement Fund for ultimate distribution to entitled plaintiffs. The first payment was to be made on November 23, 1998; the remaining payments were due on the same date in 1999, 2000 and 2001. The Settlement Agreement, however, and the establishment of the Settlement Fund thereunder, were contingent on final judicial approval, after

public review and hearing, which the parties anticipated would not materialize before the first payment was due; consequently, the Escrow Fund was designed to serve as a repository for the first installment of the settlement monies for eventual transfer to the Settlement Fund upon the final judicial approval of the Settlement Agreement.

Final judicial approval of the Settlement Agreement did not materialize until May 30, 2001. In the interim, the parties had modified the Settlement Agreement when the 1999 and 2000 installments became due so that these installments would also be paid into the Escrow Fund; furthermore, the parties provided for the acceleration, and payment into the Escrow Fund, of the last installment. On August 17, 2001, the Escrow Fund was transferred to the Settlement Fund. Until March 2001, the banks had paid compound interest on the Escrow Fund. Believing this to be a mistake, they then ceased making such interest payments. Upon transfer of the Escrow Fund to the Settlement Fund, they offset the compound interest payments, precipitating the subject dispute.

## II

■ "It is well established that '[s]ettlement agreements are contracts and must therefore be construed according to general principles of contract law.'" *Collins v. Harrison–Bode,* 303 F.3d 429, 433 (2d Cir. 2002). Section 8.3 of the Escrow Agreement states that the Agreement "shall be governed by and construed in accordance with the laws of the State of New York." Clayton Decl. Ex. G (Escrow Agreement § 8.3).

---

1. On May 17, 2002, Judge Korman recused himself on the interest issue. *See In re Holocaust Victim Assets Litig.,* 105 F.Supp.2d 139 (E.D.N.Y.2002). The matter was randomly reassigned.

 Under New York law, " '[w]hen the intent of the parties can fairly be gleaned from the face of the instrument, the plain words of the contract govern, and matters extrinsic to the agreement may not be considered.'" *RJE Corp. v. Northville Indus. Corp.*, 198 F.Supp.2d 249, 262 (E.D.N.Y.2002) (internal quotation marks omitted). "Whether a writing is ambiguous is a question of law ..., while the meaning of an ambiguous contract is a question of fact [.]" *Scholastic, Inc. v. Harris*, 259 F.3d 73, 82 (2d Cir.2001) (citations omitted). If the language is plain and unambiguous, "the contract is to be interpreted with reference only to the four corners of the document and evidence as [to] what was really intended but unstated or misstated is generally inadmissible." *United States ex. rel. AWL Indus., Inc. v. Site Remediation Servs. Corp.*, 92 F.Supp.2d 132, 135 (E.D.N.Y.2000) (internal quotation marks omitted). Contract language is plain and unambiguous if it is not "reasonably susceptible of more than one interpretation." *RJE*, 198 F.Supp.2d at 263 (internal quotation marks omitted). "A contract is ambiguous where its terms suggest more than one meaning when viewed objectively by a reasonably knowledgeable person who has examined the context of the entire integrated agreement." *Scholastic*, 259 F.3d at 82 (internal quotation marks omitted). In determining whether contract language is unambiguous, courts examine the contract as a whole, and "[w]here several instruments constitute part of the same transaction, they must ... be interpreted together." *RJE*, 198 F.Supp.2d at 263 (internal quotation marks omitted).

Section 2.2 of the Escrow Agreement provides:

> Except as provided in Section 4.1, the Bank shall pay interest on the Escrow Fund at the six (6)-month London Inter–Bank Offered Rate ("LIBOR"). Interest shall be calculated on the principal of the Escrow Fund for each day that the Escrow Fund is on deposit at the Bank until the Settlement Date based on the six (6)-month LIBOR rate in effect for that day. Interest shall be due, and shall be paid into and become part of the Escrow Fund, on the Settlement Date.

Clayton Decl. Ex. G. (Escrow Agreement at § 2.2).[2]

> Defendants argue that § 2.2 requires simple interest because it states clearly that interest was to be calculated, and thus paid, only on the principal amount. It does not say or imply that interest was to be paid on the interest earned. To make that even clearer, Section 2.2 further provide[s] that the interest earned on the principal would not even be transferred to the Escrow Fund until the end of the Escrow Fund's life. Thus, the interest earned never became part of the principal.

Defs.' Mem. at 5. Defendants note that § 2.2 "fails to supply a key term that would have been necessary had compound interest been required—whether interest should be compounded daily, weekly, monthly, or on some other basis." *Id.* Defendants also point to § 5.7 of the Settlement Agreement, which was negotiated "at approximately the same time as Section 2.2 of the Escrow Agreement and as part of the same transaction (i.e., the settlement) [.]" *Id.* at 7. Section 5.7 provides:

> Funds held in the Settlement Fund shall be invested in United States Government obligations with a maturity of 180

---

**2.** Section 4.1 of the Escrow Agreement afforded the banks the right to renegotiate the Escrow Fund interest rate if the transfer of the Escrow Fund to the Settlement Fund occurred after the Settlement Date, as defined therein.

days or less and shall collect and reinvest the interest accrued thereon. Clayton Decl. Ex. J (Settlement Agreement). Defendants argue that § 5.7's language requiring interest to be "reinvest[ed]" shows that the parties were capable of drafting language requiring compound interest, and that "[h]ad the parties wanted the interest on the Escrow Fund to be similarly compounded, they could have included the same 'reinvest' language" in § 2.2 of the Escrow Agreement. Defs.' Mem. at 7.

In support of their contention that § 2.2 of the Escrow Agreement requires compound interest, plaintiffs assert that "[i]f the banks [had] wished to impose a simple interest calculation on the Escrow Fund . . . the banks could have used the magic words 'simple interest.'" Pl.'s Mem. at 7. They argue that § 2.2's requirement that interest be calculated on a "daily principal amount makes sense only if the parties intended that principal amount to change during the course of each interest period, which would be possible only if the interest were capitalized (or compounded) on a daily basis." Pls.' Mem. at 9. They also adopt the argument contained in the declarations of banking experts that "[t]he calculation of interest on a daily basis . . . is not ordinarily associated with a simple interest calculation, since simple interest can be calculated once, at the end of the relevant period on a weighted average of the prevailing interest rates during the period." *Id.* (citing Tunick Decl. ¶ 6; Weiner Decl. ¶ 5.)

■ The Court cannot comfortably come to rest with either of the parties' contentions and concludes, therefore, that the method for calculating interest under § 2.2 is ambiguous because it "suggest[s] more than one meaning when viewed objectively by a reasonably knowledgeable person who has examined the text of the entire integrated agreement." *Scholastic,* 259 F.3d at 82.

## III

■ "Where contract language is ambiguous, extrinsic evidence is relevant to the extent it bears on the parties' objective manifestations of intent." *RJE,* 198 F.Supp.2d at 263 (internal quotation marks omitted). In that regard, "the subsequent conduct of the parties may be used to indicate their intent." *Gordon v. Vincent Youmans, Inc.,* 358 F.2d 261, 264 (2d Cir. 1965) (" 'There is no better way of ascertaining the meaning and construction of a written contract than to look at the acts and conduct of the parties under it.' ") (quoting *Seymour v. Warren,* 179 N.Y. 1, 6, 71 N.E. 260 (1904)).

■ Plaintiffs have submitted affidavits from their attorneys who were part of the Escrow Agreement negotiations, attesting to their understanding that § 2.2 was intended to require compound interest, *see* Swift Decl. ¶ 4, Hausfeld Decl. ¶¶ 4–5, Weiss Decl. ¶ 4, and have opined that Judge Korman would not have approved the establishment of the Escrow Fund if it provided only for simple interest. *See* Neuborne Decl. ¶ 13. Defendants have submitted the affidavit of their counsel who took part in the Escrow Agreement negotiations, attesting to her understanding that § 2.2 was intended to require simple interest. Clayton Decl. ¶ 7. Although during oral argument the parties expressed their belief that their submissions would obviate the need for an evidentiary hearing, *see* Tr. of Oral Argument, July 9, 2002, at 5–6, the Court would be inclined to take testimony from the attorneys and Judge Korman if it were necessary to make credibility determinations in order to resolve the matter. The Court believes this to be unnecessary, however, since it is satisfied that the following un-

disputed extrinsic evidence compels the conclusion that the parties intended that the Escrow Fund was to bear compound interest: First, in addition to paying compound interest from the inception of the Escrow Fund until they unilaterally ceased making such payments over two years later, the banks represented to Judge Korman, in monthly bank statements, that such interest payments were being made. Second, in February 2000, there arose a dispute as to whether § 4.1 of the Settlement Agreement (not to be confused with § 4.1 of the Escrow Agreement) required the banks to pay settlement distribution costs of approximately $40 million. *See* Simkins Decl. ¶ 3. As part of the resolution of this dispute, the banks had agreed to the acceleration, and payment into the Escrow Fund, of the fourth installment. In the course of negotiations, the banks' counsel calculated and proffered the Escrow Fund interest that would likely be realized on the accelerated payment based on the fact that the Escrow Fund was earning compound interest. *See* Neuborne Decl. ¶ 31.

The banks claim that the payment of compound interest through March 2001 and their statements reporting these payments to Judge Korman were "due to internal miscommunications within UBS," Defs.' Mem. at 20, and that their projected interest calculations in the course of the negotiations regarding the payment of settlement distribution costs "unthinkingly assumed the money would earn compound interest," *id.* at 15; however, given the protracted nature of the compound interest payments and the banks' reliance on compound interest calculations during the § 4.1 negotiations, the Court concludes that the acts and conduct of the banks decisively inform the Court that the parties intended that the Escrow Fund was to earn compound interest.

## CONCLUSION

The Court declares that compound interest was required to be paid on the Escrow Fund.

**SO ORDERED.**